# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JACKIE D. MASON,

     Plaintiff,

v.

MILWAUKEE COUNTY, CITY OF
MILWAUKEE, JOSEPH M. BOEHLKE,
JENNIFER JOHNSON, JON A.
CHARLES, PHILIP SEMMERT, ERIN
M. KARSHEN, ELLEN R. BROSTROM,
CINDY CARLSON,

     Defendants.

Case No. 23-CV-367-JPS

**ORDER**

## 1.  INTRODUCTION

On March 20, 2023, pro se Plaintiff Jackie Mason ("Plaintiff") filed a complaint against Defendants Milwaukee County, City of Milwaukee, Joseph M. Boehlke, Jennifer Johnson, Jon A. Charles, Philip Semmert, Erin M. Karshen, Ellen R. Brostrom, and Cindy Carlson ("Defendants"). ECF No. 1. The next day, Plaintiff filed a motion to proceed in forma pauperis. ECF No. 2. That motion, and the screening of Plaintiff's pro se complaint, are now before the Court. For the reasons discussed herein, the Court will grant the motion for leave to proceed in forma pauperis and will allow some, but not all, of the asserted claims to proceed.

## 2.  MOTION TO PROCEED IN FORMA PAUPERIS

On the question of indigence, although Plaintiff need not show that he is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), the privilege of proceeding *in forma pauperis* "is reserved to the many truly

impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

In his motion, Plaintiff avers that he is unemployed, unmarried, and without dependents. ECF No. 2 at 1–2. He attests to having no income, no savings, and no residence of his own. *Id*. at 2–4. He attests to having been recently homeless after serving time in prison. *Id*. at 4. The Court is satisfied that Plaintiff is indigent and will grant his motion for leave to proceed in forma pauperis.

## 3. SCREENING

### 3.1 Standards

Notwithstanding the payment of any filing fee, the Court may screen a complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . ."); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status."). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Case 2:23-cv-00367-JPS    Filed 04/12/23    Page 2 of 22    Document 5

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

"What is a short and plain statement depends, of course, on the circumstances of the case." *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387 (10th Cir. 1980). And "undue length alone" may not necessarily warrant dismissal of an otherwise valid complaint. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). But rarely will this Court consider a lengthy pro se complaint "short and plain," unless it is clear and intelligible. *See Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 U.S. Dist. LEXIS 21499, at *5 (E.D. Penn. Oct. 25, 2004) (80-page pro se complaint did not comply with Rule 8); *Struggs v. Pfeiffer*, 2019 U.S. Dist. LEXIS 202582, 2019 WL 6211229, at *1–2 (E.D. Cal. Nov. 21, 2019) (dismissing 42-page complaint as noncompliant with Rule 8). And shorter complaints may still run afoul of the rule if they are rambling, repetitive, or confusing. *Stanard*, 658 F.3d at 798 ("[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy."). *See also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, No. 13-CV-3106, 2017 U.S. Dist. LEXIS 198374, at * (26–27 (N.D. Ill. Dec. 1, 2017) ("While a minor amount of surplus material in a complaint is not enough to frustrate Rule 8's goals, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations are grounds for dismissal.") (citing *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013)).

The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

### 3.2    Plaintiff's Allegations

Plaintiff asserts that Defendants violated his rights when they investigated, prosecuted, and imprisoned him in *State of Wisconsin v. Jackie D. Mason*, Case No. 2012CF000228 (Milwaukee Cnty. Cir. Ct), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2012CF000228&county No=40&index=0. ECF No. 1 at 6. The named Defendants are represented as being City of Milwaukee police officers, a Milwaukee County prosecutor, and a Milwaukee County Circuit Court Judge. *Id*. at 4–5.

First, Plaintiff alleges that various City of Milwaukee police officers produced and presented fabricated police reports accusing him of sexual assault and battery against a victim to whom the Court will refer as S.L. Plaintiff writes that Defendants Jon A. Charles ("Charles") and Philip Semmert ("Semmert"), City of Milwaukee police officers, made and

presented to the court a police report based on a false statement. *Id*. at 6. He writes that this report was the basis of Counts 1 and 2 "in the trial of State of Wisconsin v. Jackie D. Mason." *Id*. Plaintiff alleges that Charles and Semmert falsified the statement by "changing the date's [sic] of the alleged allegations." *Id*. at 7. He claims that this resulted in his unlawful imprisonment between "January of 2012, and September of 2022." *Id*.

As to Defendant Cindy Carlson ("Carlson"), also a Milwaukee County police officer, Plaintiff alleges that she produced and filed a report which formed the basis for Counts 3 and 4 against him in the aforementioned criminal case. *Id*. That report, too, contained allegations of sexual assault and battery against S.L. *Id*. According to Plaintiff, the allegations were "unsupported by the relevant facts . . . and evidence." *Id*. He additionally alleges that he was not given "notice of the charges against him." *Id*.

He makes similar allegations as to Defendants Joseph Boehlke ("Boehlke") and Jennifer Johnson ("Johnson"). *Id.* at 7. He claims they produced and filed a police report which formed the basis for Count 5. *Id*. Plaintiff alleges that the report contained three purported witness statements accusing Plaintiff of battering S.L. *Id*. He asserts that this report was knowingly false and fabricated. *Id.*

Plaintiff represents that Defendant Erin Karshen ("Karshen") was the lead prosecutor in the aforementioned criminal case against him. *Id*. at 8. He states that she prosecuted him despite knowing that there was insufficient evidence to support the charged crimes and that she refused to hand over exculpatory evidence. *Id*. He also asserts that she submitted a motion in his criminal case that was knowingly false and that she coached adverse witnesses to "give perjurious testimony." *Id*. at 8–9.

Lastly, Plaintiff alleges that Defendant Ellen R. Brostrom ("Brostrom"), presiding judge of his criminal trial, unlawfully denied him the right to represent himself at trial and to be heard regarding the withdrawal of his counsel and that she was biased against him. *Id.* at 9.

### 3.3 Plaintiff's Underlying Criminal Case and Subsequent Habeas Proceedings

For the sake of clarity, the Court will elaborate as to Plaintiff's underlying criminal case and the proceedings that followed.[1] Plaintiff was charged with two counts of third-degree sexual assault and three counts of aggravated battery. His jury trial began on November 27, 2012. The jury returned a verdict of guilty as to all counts. The circuit court accordingly entered judgment reflecting Plaintiff's conviction on two counts of third-degree sexual assault and three counts of substantial battery. *State v. Mason*, 909 N.W.2d 209, ¶ 1 (Wis. Ct. App. 2017).

Plaintiff thereafter filed various pro se postconviction motions. *Mason*, 909 N.W.2d 209, ¶ 2. The circuit court denied these motions, and the matter went before the Wisconsin Court of Appeals. The appellate court affirmed the judgment and orders of the circuit court, concluding that the joinder of the charges against Plaintiff was proper, *id.*, ¶ 6, that the circuit court properly denied his request to represent himself, *id.*, ¶ 8, and that Plaintiff had not demonstrated that he was prejudiced by any alleged

---

[1] Where not otherwise specified, the information here is pulled from the trial court's docket in *State of Wisconsin v. Jackie D. Mason*, Case No. 2012CF000228 (Milwaukee Cnty. Cir. Ct.), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2012CF000228&countyNo=40&index=0.

ineffective assistance of counsel, *id.*, ¶¶ 10–12.² On July 10, 2018, the Wisconsin Supreme Court denied Plaintiff's petition for review. *State v Mason*, 918 N.W.2d 431, ¶ 1 (Wis. 2018).

On August 31, 2018, Plaintiff filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See Mason v. Hepp*, No. 18-CV-1351-PP, 2021 U.S. Dist. LEXIS 57944 (E.D. Wis. Mar. 26, 2021). The district court screened the petition on March 26, 2021. *Id.* Seeing no clear barrier to proceeding in habeas, the court ordered that Plaintiff could proceed on the grounds raised. *Id.* at *5.

On March 14, 2022, the district court granted the habeas petition, concluding that the Wisconsin Court of Appeals' rejection of "one of the petitioner's claims resulted from an unreasonable determination of the facts in light of the evidence presented in the state proceeding and involved an unreasonable application of clearly established federal law . . . ." *See* Case No. 18-CV-1351, ECF No. 31 at 1. The district court discussed Plaintiff's repeated requests for self-representation and the circuit court's denial thereof. *Id.* at 3–12. At a final pretrial conference on August 31, 2012, the circuit court denied Plaintiff's request to represent himself, stating that there was not "time for that," that the circuit court was "not planning on vacating" the trial date, that the circuit court did not find Plaintiff competent to decide to represent himself, and that Plaintiff's lawyer, Attorney Hicks, was doing a good job. *Id.* at 9–10.

---

²The Wisconsin Court of Appeals also declined to consider Plaintiff's argument that he was "prejudiced by the joinder because the charges were all substantiated solely on the word of S.L., who, he argues, was not credible" because it was underdeveloped. *Mason*, 909 N.W.2d 209, ¶ 7. The appellate court similarly declined to consider Plaintiff's argument that he was denied the right to an impartial judge because it too was underdeveloped. *Id.*, ¶ 13.

Following an adjournment of the trial date in order to respond to pretrial motions, the circuit court received additional requests for self-representation from Plaintiff. *Id*. at 15. In several letters received by the circuit court, Plaintiff complained about his attorney's performance and Plaintiff's inability to "trust [his] lawyer." *Id*. at 15–16. The circuit court acknowledged these letters in a motion hearing held in early October of 2012. *Id*. at 17. The circuit court at that time stated that "if these [letters] are construed as a request for a new lawyer, I deny it. If they are construed as a request to adjourn the trial, I deny it." *Id*. Plaintiff at that time asked if he was "allowed to address the Court at all," and the circuit court said no. *Id*. at 18.

The district court, evaluating Plaintiff's § 2254 habeas petition, then described how, "[a]s it turned out," the Wisconsin Supreme Court had suspended Attorney Hicks's law license in September of 2012. *Id*. When the circuit court became aware of this, it ordered Attorney Hicks to show cause as to why he had appeared at the October 2012 hearing when he had been suspended from the practice of law. *Id*.

The circuit court addressed the issue at a hearing on October 12, 2012. Plaintiff was not present, and Attorney Hicks waived Plaintiff's appearance. *Id*. at 19. Attorney Hicks claimed that at the time he appeared at the previous hearing before the circuit court, he had been unaware of the suspension of his law license. *Id*. The circuit court asked Attorney Hicks if he anticipated a prompt reinstatement of his law license, and Attorney Hicks responded in the affirmative. *Id*. The circuit court concluded by advising Attorney Hicks that he needed to have his license reinstated by the time of the next hearing, which was set for October 18, 2012, and the circuit court instructed him to discuss the issue with Plaintiff. *Id*. at 19–20.

Attorney Hicks appeared at the October 18, 2012 hearing, again without Plaintiff. *Id*. at 20. The docket note for that hearing indicates that Attorney Hicks had been reinstated and that the case was adjourned for a final pretrial. *Id*.

The following month, Plaintiff submitted various motions—seeking substitution of the judge, dismissal of the charges against him, and dismissal of Attorney Hicks. *Id*. And on November 20, 2012—the date scheduled for the final pretrial conference—Attorney Hicks moved to withdraw as counsel. *Id*. Attorney Hicks informed the circuit court that he and Plaintiff were "not talking at all" and have "no communication at this point," which "hamper[ed] [his] ability to represent" Plaintiff. *Id*. at 21. The circuit court stated that it had "significant concerns that [Plaintiff's] refusal to speak with his lawyer is just an effort on [Plaintiff's] part to thwart the efficient administration of justice . . . ." *Id*. at 22. The circuit court reiterated that it believed that Attorney Hicks was doing a good job and that it was "not inclined to grant the motion." *Id*. The circuit court officially denied the motion for withdrawal, and additionally denied the various requests submitted by Plaintiff himself. *Id*. at 23.

For the first two days of trial, Plaintiff refused to participate and opted instead to remain in the bullpen. *Id*. at 23–24. Attorney Hicks also conceded to the circuit court that he had not met with Plaintiff since prior to the November 20, 2012 hearing, in part because he had been out of town and in part because he believed Plaintiff did not wish to speak to him. *Id*. at 24. Plaintiff again reiterated that he did not want to be represented by Attorney Hicks. *Id*. The circuit court stated that its "concern with [Plaintiff's] competency has always been basically [his] ability to communicate in the courtroom" and that Plaintiff had been consistently

disruptive and troublesome in court. *Id*. at 25. The circuit court then went on to say that it did not "have any concerns about [Plaintiff's] competency to stand trial," but that it firmly did not believe Plaintiff was competent to represent himself. *Id*. To this, Plaintiff told the circuit court to "do what [it] want[ed] to do" and that he would "leave it to the appeals court." *Id*. at 26. The circuit court accepted Plaintiff's instruction that if Attorney Hicks were to remain, he was not to talk to anyone, do any questioning, or perform in any other capacity at trial. *Id*. at 36. On the third day of trial, Plaintiff agreed to appear in the courtroom and allowed Attorney Hicks to try the case. *Id*. at 40.

At sentencing, Plaintiff objected to the circuit court's refusal to address several pro se requests he had sent. *Id*. at 42. Plaintiff insisted that he "wrote those motions because [Attorney Hicks] wouldn't write them" and that he knew that "[a]nything not brought up in circuit court cannot be appealed upon." *Id*. Plaintiff additionally reminded the circuit court that it "let [Attorney Hicks] represent [Plaintiff] with a suspended license." *Id*. The circuit court responded that it had "dealt with the issue of his licensure," to which Plaintiff argued that Attorney Hicks "was supposed to notify [him]" and that Plaintiff was "supposed to get another attorney." *Id*. at 43. The circuit court insisted that there was no need for a replacement attorney because the "suspension was brief" and the circuit court had "addressed the issue with the Office of Lawyer Regulation." *Id*. at 44. To this, Plaintiff asked, "[h]ow come you guys kept it a secret from me, then?" *Id*.

In granting the habeas petition, the district court concluded that the Wisconsin Court of Appeals had erroneously rejected Plaintiff's claim that he was unlawfully disallowed from representing himself. *Id*. at 67–73. The court noted that Plaintiff had made "clear and unequivocal" requests to

represent himself. *Id.* at 70. The court concluded that "[t]he appellate court's conclusion that the trial court denied the petitioner's request because the petitioner 'repeatedly engaged in deliberately disruptive conduct' was based on an unreasonable determination of the facts in light of the evidence . . . ."[3] *Id.* at 72. Accordingly, the district court ordered the respondent to "release the petitioner within one hundred twenty days unless the State of Wisconsin elects to retry him." *Id.* at 88.

The circuit court accordingly vacated the conviction as to all charges and reinstated bail. The circuit court also held a colloquy with Plaintiff and determined that he freely, voluntarily, and intelligently waived his right to proceed with counsel. Shortly thereafter, Plaintiff moved for a speedy trial. Plaintiff also successfully pursued a substitution of the presiding judge. Several months later, Plaintiff moved for dismissal of the charges against him pursuant to his right to a speedy trial. Plaintiff also notified the circuit court that the alleged victim in the case, S.L., had passed away.

At the time of the Court's writing, the most recent entry on the circuit court docket is from October 6, 2022. The docket does not reflect at what point Plaintiff's criminal case was dismissed—only that the charges were, at some point, dismissed on the prosecutor's motion.

### 3.4    Analysis

#### 3.4.1    *Heck v. Humphrey*

The Court must first address the U.S. Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

_____

[3] "Assuming without deciding that the petitioner *did* engage in difficult, disruptive and disrespectful behavior, that behavior occurred after the court denied his request to represent himself at only the second hearing he'd had before it." ECF No. 31 at 723.

Under *Heck*, a plaintiff is precluded from bringing claims for damages if judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence." . . . In other words, to the extent plaintiff is seeking damages premised on a wrongful conviction or sentence, he cannot proceed, unless his conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Moore v. Salas*, 2018 U.S. Dist. LEXIS 158254, at *3–4 (W.D. Wis. Sept. 17, 2018). A court in this district called into question the validity of the circuit court's conviction when it granted Plaintiff's § 2254 habeas petition. *See* Case No. 18-CV-1351, ECF No. 31 Accordingly, *Heck* would not appear to bar this action.

### 3.4.2   Judicial Immunity

The Court must also address potential issues of immunity since Plaintiff brings this action against the presiding circuit court judge and prosecutor from his criminal case. Judges are entitled to absolute immunity when the challenged actions are judicial in nature. *See Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). "Absolute immunity is a powerful shield attaching primarily to judicial functions—not to the person or position." *Id*. (internal citations omitted). "A judge has absolute immunity for any judicial actions unless the judge acted in absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011).

"When a functional analysis of the responsibilities at issue reveals that they are judicial in nature, the actor is entitled to absolute immunity from damages no matter how erroneous the act or injurious the consequences." *Brunson*, 843 F.3d at 710; *see also Bolin v. Story,* 225 F.3d 1234,

1239 (7th Cir. 2020) ("This immunity applies even when the judge's actions are in error, malicious, or in excess of his or her jurisdiction."). "If the functions are not judicial in nature, however, then absolute immunity is not available." *Brunson,* 843 F.3d at 710. But even then, the official is still left with the protection of qualified immunity. *Id*.

Plaintiff alleges that Brostrom erroneously denied him the right to represent himself at trial, unlawfully mandated that he proceed to trial with Attorney Hicks, ruled on motions disadvantageously to Plaintiff, and demonstrated bias against him. ECF No. 1 at 9–10. This alleged conduct resulted in Plaintiff being "discredit[ed] . . . at trial by fraud" and being "unlawfully imprisoned from July, 2012, to September of 2022." *Id*.

Ruling on motions—whether regarding one's desire to proceed pro se or on the admission of evidence—is judicial in nature. This conduct is squarely undertaken in one's role as a judicial officer. Accordingly, Brostrom is protected by absolute judicial immunity to the extent that Plaintiff challenges these actions.

Judicial immunity even extends to protect Brostrom from the claim that she performed her duties while biased against Plaintiff. "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (internal citation omitted). Accordingly, each of Plaintiff's claims as currently pleaded against Brostrom is barred by the doctrine of absolute judicial immunity. The Court will therefore dismiss Brostrom from the action.

### 3.4.3 Prosecutorial Immunity

Prosecutors are similarly entitled to a great degree of immunity. "A prosecutor is immune from Section 1983 liability 'in initiating a prosecution and in presenting the State's case.'" *Collins v. Wis.*, No. 16-cv-1298-JPS, 2016 U.S. Dist. LEXIS 187273, at *5–6 (E.D. Wis. Nov. 23, 2016) (internal citation omitted). Prosecutorial immunity extends to "conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016).

"At the other end of the spectrum, a prosecutor is not absolutely immune for acts that 'go beyond the strictly prosecutorial to include investigation.'" *Bianchi*, 818 F.3d at 318 (internal citation omitted). "A prosecutor acting in an investigative capacity may claim only the same qualified immunity that protects police officers and other law-enforcement investigators." *Id.*[4]

Plaintiff alleges that Erin M. Karshen ("Karshen"), the lead prosecutor in his criminal case, prosecuted him knowing the evidence was insufficient to support the charges, refused to turn over exculpatory evidence, presented false information to the circuit court which served to defraud the jury, and coached adverse witnesses to give perjurious testimony. ECF No. 1 at 8–9.

As noted, prosecutors are entitled to immunity for their decision to prosecute an individual. Accordingly, to the extent that Plaintiff alleges that

---

[4]For example, "[i]f a prosecutor plants evidence before someone is arrested, he enjoys only qualified immunity." *Fields v. Wharrie*, 672 F.3d 505, 512 (7th Cir. 2012). "Yet, for that same fabrication of evidence, if he commits the act during a judicial proceeding, he receives absolute immunity." *Id.*

Karshen proceeded in prosecuting him notwithstanding an alleged insufficiency of evidence, prosecutorial immunity bars that claim. Similarly, a claim that an attorney presented false statements at trial is barred by prosecutorial immunity. *Bianchi*, 818 F.3d at 318 ([I]t's clear that absolute immunity knocks out a large part of the case against [defendant]—most notably the claims premised on allegations that [defendant] presented false statements to the grand jury and at trial."). Accordingly, to the extent that Plaintiff seeks relief against Karshen for her alleged provision of false information to the circuit court, the Court must dismiss that claim.

As noted, Plaintiff also seeks relief for Karshen's alleged failure to provide him with exculpatory evidence. Even assuming *arguendo* that Karshen did so, it is not entirely clear whether Plaintiff can maintain such a claim. "[A] *Brady* violation in the criminal context does not necessarily equate to civil liability under § 1983." *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022). It would appear that the viability of this claim will come down, at least partially, to the timing of the alleged violation. "Absolute immunity bars suits against prosecutors, at least when the nondisclosure of exculpatory evidence occurs after arrest and before a conviction becomes final." *Id.*; *see also Wilson v. Barcella*, No. H-05-3646, 2007 U.S. Dist. LEXIS 22934, at *72 (S.D. Tex. Mar. 29, 2007) ("[E]ven egregious *Brady* violations are generally protected by absolute immunity if the evidence is withheld *after* prosecutors have established probable cause.") (emphasis added). This is so because "absolute immunity applies to a prosecutor's decisions about evidence and her implementation of her *Brady* responsibilities." *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012).

At the same time, there is authority indicating that "the Court has never held that a wrongly accused or convicted person cannot bring a civil

case in federal court under *Brady v. Maryland,* 373 U.S. 83 . . . (1963), alleging violations of due process by state prosecutors and law enforcement officers for engaging in such improper activities as withholding exculpatory evidence, fabricating false reports, manipulating testimony or employing misleading identification procedures." *Armstrong v. Norsetter*, No. 12-cv-426-bbc, 2013 U.S. Dist. LEXIS 151350, at *9 (W.D. Wis. Oct. 22, 2013). "Where a litigant presents a due process claim—*Brady, Giglio*, or otherwise—the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct." *Whitlock*, 682 F.3d at 579–80.

Plaintiff's complaint does not specify the timing of this alleged *Brady* violation. He provides only that "Karshen was given numerous pre-trial, and post-conviction Demands for Discovery and refused to turnover [sic] to the plaintiff exculpatory evidence." ECF No. 1 at 8. It is therefore not entirely clear whether the alleged violation occurred "after arrest and before a conviction bec[ame] final" such that it would be barred by prosecutorial immunity. *Moran*, 54 F.4th at 492. It is simply too early for the Court to determine whether Plaintiff's claim against Karshen for an alleged *Brady* violation is barred. *See Whitlock*, 682 F.3d at 580 ("The focus of our case, as we have narrowed it, is exclusively on the period before probable cause supported the prosecution, when a prosecutor is unquestionably acting in an investigative role. Because there are factual issues that must be resolved before we can pin-point that moment, it is not suitable for resolution at this time.").

A separate issue, however, is that it is insufficient for pleading purposes under Federal Rule of Civil Procedure 8 for Plaintiff to allege merely that Karshen "refused to turnover [sic] exculpatory evidence." ECF

No. 1 at 8. This statement is bare-bones and insufficiently pleaded. The Court will accordingly afford Plaintiff the opportunity to file an amended complaint within twenty-eight (28) days of the entry of this Order. Should he choose to amend his complaint, he needs to provide further factual elaboration on this claim. When did this alleged *Brady* violation occur? What evidence was allegedly withheld? If Plaintiff fails to timely and sufficiently elaborate as to the facts underlying this alleged *Brady* violation, the claim will not proceed.

Lastly, the Court must address Plaintiff's claim that Karshen coached adverse witnesses to perjure themselves. ECF No. 1 at 9. Again, it would appear that the validity of this claim will turn on whether this alleged conduct occurred during the investigatory phase of the case—in other words, on whether Karshen was acting as an investigator or an advocate of the State at the time of this alleged conduct.

"[C]oercing witnesses to perjure themselves during the investigatory phase of a case can give rise to an actionable due process violation against a prosecutor." *Resendix v. City of Chicago*, No. 16-C-11046, 2017 U.S. Dist. LEXIS 233180, at *6 (N.D. Ill. Aug. 10, 2017) (quoting *Whitlock*, 682 F.3d at 581). "Prosecutors do not have absolute immunity for Section 1983 claims . . . where a plaintiff alleges that the defendant coerced a witness to give testimony that he knew to be false only to lead to the plaintiff's conviction and imprisonment, from which he was later acquitted." *Id*. The Court will instruct Plaintiff to include in his amended complaint, should he choose to file one, additional facts as to this claim. Which adverse witnesses were allegedly coached to perjure themselves? What were they coached to say, and why did it constitute perjury? When did Karshen allegedly coach

these witnesses to perjure themselves? If Plaintiff is unable to acquire these details, the Court will allow him to investigate the issue in discovery.

### 3.4.4 *Monell*'s Requirements

Plaintiff additionally seeks relief against Milwaukee County and the City of Milwaukee, and so the Court must address the requirements of *Monell. Monell v. Department of Social Services* provides that a county or municipality cannot be "held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, . . . a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 690 (1978); *see also Snyder v. King*, 745 F.3d 242, 251 (7th Cir. 2014) ("[M]unicipalities and counties qualify as 'persons' for liability under 42 U.S.C. § 1983").

Accordingly, "whether or not a plaintiff has stated a Section 1983 claim against a municipal entity typically hinges on the extent to which that municipal entity was independently responsible for the allegedly constitutional act." *Snyder*, 745 F.3d at 247. "*Monell* liability is difficult to establish precisely because of the care the law has taken to avoid holding a municipality responsible for an employee's misconduct." *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). "A primary guardrail is the threshold requirement of a plaintiff showing that a municipal policy or custom caused the constitutional injury." *Id*. But that is not all. "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiff makes no allegation that his injuries were caused by a policy or custom of either Milwaukee County or the City of Milwaukee

County. *See Snyder*, 745 F.3d at 247 ("The operative complaint in this case is devoid of any remotely specific allegation that a county-level policy or custom caused [plaintiff's] harm.").[5] That alone is grounds for dismissal of those defendants from the action. *Id*. Accordingly, the Court is constrained to dismiss Milwaukee County and the City of Milwaukee from the action.

### 3.4.5   Claims Against the Officers

That leaves the Court to discuss the claims asserted against the various police officer defendants. To reiterate, the general allegations against the various police officer defendants are that they produced and presented to the circuit court police reports that contained knowingly false statements and misrepresented dates, and which were unsupported by the evidence. *See generally* ECF No. 1. Plaintiff claims that this conduct resulted in his unlawful imprisonment. These claims will proceed.

'We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock*, 682 F.3d at 580. "In *Jones v. City of Chicago*, we upheld a jury's imposition of damages against a variety of defendants, including police officers . . ., who 'were determined to put away [the defendant] regardless of the evidence.'" *Id*. (internal citation omitted). "We have since said that there 'is no disputing that such conduct [fabricating evidence] violates clearly established constitutional rights.'" *Id*. (internal citation omitted). *See also Ferguson v. Cook County,* No. 20-cv-4046, 2021 U.S. Dist. LEXIS 137158, at *30 (N.D. Ill. July 22, 2021) ("The Seventh Circuit has recognized that '[a]

---

[5]To the contrary, Plaintiff explicitly acknowledges that he seeks relief from Milwaukee County and the City of Milwaukee due to the actions of their employees. ECF No. 1 at 6.

police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself.'") (internal citation omitted); *Curtis v. City of Chicago,* No. 01-C-8004, 2002 U.S. Dist. LEXIS 24053, at *10 (N.D. Ill. Dec. 12, 2002) ("The amended complaint adequately pleads a due process violation. Plaintiff alleges that criminal charges were initiated against him based on the falsified police records . . . . [He] has alleged that he was wrongfully detained in the interim for over two years due to the initiation of criminal charges based on the falsified police records. 'Because an unfair trial is a predictable consequence when police officers systematically mislead prosecutors, the court concludes that Plaintiff has stated a due process claim with regard to his allegations' that the Officers falsified police records.").

**4.     CONCLUSION**

For the reasons stated herein, the Court will grant Plaintiff's motion to proceed in forma pauperis. But for the reasons discussed, the Court must dismiss Brostrom, the City of Milwaukee, and Milwaukee County as defendants from the action. It must dismiss several claims as asserted against Karshen.

The Court is enclosing a copy of its amended complaint form, as well as a copy of the guide entitled "Answers to Pro Se Litigants' Common Questions." Plaintiff should not make any further attempts to list as defendants any of those individuals or entities that the Court has already disallowed Plaintiff from including as named defendants in this action. Moving forward, Plaintiff will not be allowed to add and retract in piecemeal style components to his complaint. *See Brown v. Uhl,* No. 22-CV-

131-JPS, 2022 U.S. Dist. LEXIS 136801, at * 3 (E.D. Wis. Aug. 2, 2022) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir. 1994) ("Complaints may not be amended in a piecemeal fashion; the proposed amended complaint must be complete and set forth all claims against all defendants in one document.").

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to proceed in forma pauperis, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the claims asserted against Defendant Ellen R. Brostrom be and the same are hereby **DISMISSED** and Ellen R. Brostrom be and the same is hereby **DISMISSED** as a defendant from this action;

**IT IS FURTHER ORDERED** that Plaintiff's claim that Defendant Erin M. Karshen unlawfully prosecuted him notwithstanding an alleged insufficiency of evidence, ECF No. 1 at 8, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Plaintiff's claim that Defendant Erin M. Karshen unlawfully presented false information at trial, ECF No. 1 at 2, be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Milwaukee County and the City of Milwaukee be and the same are hereby **DISMISSED** as defendants from this action;

**IT IS FURTHER ORDERED** that Plaintiff may **FILE** an amended complaint within **twenty-eight (28) days** of the entry of this Order to address the deficiencies herein discussed. Should Plaintiff fail to do so, his action will proceed only as to those claims that were properly pleaded in the first instance; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the amended complaint form and a copy of the guide entitled "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 12th day of April, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge